IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| STEVE RIDDICK, | ) | CASE NO. 7:20CV00081 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| OFFICER LARRY MULLINS, ET AL., | ) | By:  Glen E. Conrad |
| | ) | Senior United States District Judge |
| Defendants. | ) | |

    This case is presently before the court on Plaintiff Steve Riddick's second motion seeking a preliminary injunction.  After review of Riddick's submissions, the court concludes that his motion seeking interlocutory injunctive relief must be denied.

    In this case, Riddick is pursuing claims concerning events that began on April 5, 2019, when Riddick refused to come to his cell door, was allegedly sprayed with mace and punched, placed in ambulatory restraints, denied appropriate medical treatment for his resulting injuries, and charged and convicted of disciplinary offenses.

    In Riddick's present motion seeking interlocutory relief and a later supplemental brief, see ECF Nos. 37 and 62, he raises entirely new allegations about events that have happened at Red Onion State Prison ("Red Onion") since he mailed his initial § 1983 Complaint to the court in January 2020.  He alleges that: on July 17, 2020, while he was restrained to a table in the pod near the kiosk, officers violated Red Onion policy and allowed inmate Hoehn to assault Riddick, causing bruises, cuts, and a sprained knee; after this inmate assault, white officers made "inappropriate remarks" and threats toward Riddick, who is black, and handled him roughly, as though he had attacked someone, Mot. Prelim. Inj. 3-4, ECF No. 37; officer Collins told Riddick he would "never use the kiosk again" and that Riddick "wouldn't win or get any lawsuit money out of him," id. at 4; the nursing staff examined Riddick's injuries, provided only "motion [and]

ice," id. at 5, and, several hours later, a band aid, but refused his request for ointment; Qualified Mental Health Professional Trent made rounds, but refused Riddick's request to discuss his injuries and to schedule an appointment with the psychiatrist; an officer stood on Riddick's restraints, causing cuts to his ankles; on July 16, 2020, officer Gilbert said that Riddick was scared to come out of his cell because he had been assaulted; for several weeks, Red Onion staff allowed other inmates to access Riddick's "J-pay media account"—to spend his stamps, send bogus emails, erase emails, reset his password and security questions, and direct J-pay to deactivate his account, id. at 7-10; an inmate tried to transfer money to Riddick's account and deleted all of his photos; and in June or July of 2020, a counselor showed an inmate one of Riddick's request forms that listed other inmates' cell numbers, including inmate Hoehn's number, and this inmate told Hoehn that Riddick was a snitch.  Riddick alleges that Hoehn is a high security inmate with a gang affiliation and that Riddick intends to bring civil and criminal legal actions against this inmate.  As relief in the present motion, Riddick asks the court to view the video of the July 17, 2020, inmate assault by Hoehn and to preserve video of that incident.  He also demands injunctive relief, ordering prison officials to transfer Riddick away from Red Onion, to allow him to exhaust administrative remedies "for the assault incident and events after[,] to assist [Riddick] in pressing charges against Hoehn[, and] to stop any retaliation." Id. at 13-14.

In a supplemental brief, ECF 62, Riddick adds these allegations to his motion:  on September 17, 2020, while Riddick was in the shower, an officer allowed another inmate to pour water down a vent to flood Riddick's cell, damaging some of his legal paperwork; when officers returned Riddick to the cell, they required him to enter it, despite the dirty water on the floor; four hours later, officers moved Riddick to the shower while his cell was cleaned and fastened

the restraints too tightly; and two officers have mentioned suicide to Riddick, knowing that he takes medication for mental health disorders. Riddick also asks the court to preserve video footage from the incident on September 27, 2020. He states that several of the officers involved in the new alleged violations from July and September of 2020 are defendants in one of his pending lawsuits.

"[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action." Omega World Travel v. TWA, 111 F.3d 14, 16 (4th Cir. 1997). Thus, to warrant interlocutory relief, the movant "must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." Id. Riddick fails to state any facts showing that the official conduct of which he complains in this motion for preliminary injunction as supplemented was caused or motivated by the official conduct alleged in this civil action, which concerns events that occurred in April of 2019.[1] Because Riddick asks for preliminary injunctive relief not clearly related to the claims in his Amended Complaint in this case, the court cannot find that he is entitled to the extraordinary remedy he is seeking and will deny his motion as supplemented. An appropriate order will enter this day.

**ENTER**: This  24th  day of November, 2020.

_____
Senior United States District Judge

---

[1] Riddick asserts that some officers involved in the events described in his motion and its supplement are defendants in this case or another lawsuit he has filed. Perhaps he is suggesting that their actions constitute retaliation for those lawsuits. However, such vague and merely conclusory assertions of retaliation are not sufficient to connect the new allegations about adverse treatment to Riddick's pending lawsuits or to state any actionable retaliation claim under § 1983. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994) (requiring more than conclusory assertion of retaliation to state § 1983 claim); Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (requiring inmate to show likelihood of irreparable harm, success on merits of his claims, and other factors to warrant interlocutory injunctive relief).