# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

|  |  |  |
|---|---|---|
| STEVE RIDDICK, | ) | CASE NO. 7:20cv00081 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| WARDEN JEFFERY B. KISER, | ) | By:   Hon. Thomas T. Cullen |
| *et al.*, | ) | United States District Judge |
| Defendants. | ) | |

Plaintiff Steve Riddick, a Virginia inmate proceeding *pro se*, filed this civil rights complaint under 42 U.S.C. § 1983, against numerous defendants.[1] Presently before the court is a motion for summary judgment filed by defendant Rachel Phillips, R.N. ("Nurse Phillips").[2] After review of the parties' submissions and the record, the court concludes that Nurse Phillips' motion must be granted.

## I.   BACKGROUND

At the time Riddick's claims against Nurse Phillips arose, he was incarcerated at Red Onion State Prison ("Red Onion"), a facility operated by the Virginia Department of Corrections ("VDOC"). Riddick alleges that on April 5, 2019, he refused to comply with

---

[1] In addition to this lawsuit, Riddick has 14 other actions currently pending in this court: *Riddick v. Mullins, et al.*, 7:20cv96; *Riddick v. Trent, et al.*, 7:20cv447; *Riddick v. Lambert, et al.*, 7:20cv448; *Riddick v. Mathena, et al.*, 7:20cv449; *Riddick v. Mickles, et al.*, 7:20cv559; *Riddick v. Moore, et al.*, 7:20cv560; *Riddick v. Kegley, et al.*, 7:20cv562; *Riddick v. Collins, et al.*, 7:20cv742; *Riddick v. Kiser, et al.*, 7:21cv178; *Riddick v. Phillips, et al.*, 7:22cv290; *Riddick v. Mullens, et al.*, 7:22cv291; *Riddick v. Barton, et al.*, 7:22cv297; *Riddick v. Clarke, et al.*, 7:22cv304; and *Riddick v. White, et al.*, 7:22cv437.

[2] Nurse Phillips initially filed a summary judgment motion arguing that Riddick had failed to exhaust available administrative remedies before filing this action, as required by 42 U.S.C. § 1997e(a). The court denied that motion and referred the exhaustion issue for an evidentiary hearing before the magistrate judge. (*See* Mem. Op. & Order [ECF Nos. 211, 212].) The defendants later withdrew the exhaustion defense. (ECF Nos. 227, 228.) Thereafter, Nurse Phillips moved for summary judgment on the merits of Riddick's claim against her. (ECF No. 247.)

security officers' orders directing him to come to the door to be handcuffed. As a result, Sgt. Taylor sprayed Riddick three times with "O.C. spray [and] once straight in [the] face."[3] (Am. Compl. 9 [ECF No. 12].)[4] Officers then removed Riddick from his cell, transported him to a shower to wash off the chemical spray, and placed him in ambulatory restraints for some time.

Riddick's sole claim against Nurse Phillips, added by a late amendment (*see generally* ECF No. 100), is based on defendant B. Taylor's representation that Nurse Phillips notified Taylor that no medical condition prohibited use of OC spray against Riddick on April 5, 2019. Specifically, Taylor stated:

> I called the medical department to secure authorization to administer O.C. spray into Riddick's cell and to use electronic devices, if necessary. It is standard procedure to contact medical personnel prior to using O.C. pepper spray or electronic devices on an inmate . . . to ascertain if there is a medical reason why [such measures] should not be utilized against him. Nurse Phillips gave authorization at approximately 6:05 a.m. that there was no medical reason why O.C. pepper spray . . . should not be utilized against [Riddick].

(Aff. of B. Taylor ¶ 9, Nov. 6, 2020 [ECF No. 81-2].) Because his medical history includes a diagnosis for asthma, Riddick contends that Nurse Phillips acted with deliberate indifference to his serious medical needs, in violation of his Eighth Amendment rights.

In her motion for summary judgment, Nurse Phillips makes several arguments in support of her motion for summary judgment: (1) asthma is not a contraindication for the use of OC spray; (2) Riddick was treated promptly after the deployment of OC spray; (3) Riddick

---

[3] Oleoresin Capsicum or O.C. spray is a chemical agent similar to what is commonly known as pepper spray or mace. It irritates a person's eyes, throat, and nose. *See Park v. Shiflett*, 250 F.3d 843, 848-49 (4th Cir. 2001) (describing the physiological effects of OC spray).

[4] For the sake of consistency, all page cites to the record in this opinion refer to the page numbers assigned to the documents by the court's electronic filing system.

did not exhibit (or allege) serious symptoms after the use of OC spray; and (4) in any event, Nurse Phillips is entitled to qualified immunity. (*See generally* ECF No. 247.) In support of her motion, Nurse Phillips submitted the declaration of Red Onion Nurse Manager J. Bledsoe ("Nurse Manager Bledsoe"), who based her on pertinent portions of Riddick's medical records.[5] (*See generally* Decl. of J. Bledsoe, RNCB [ECF No. 248-1]).

As part of her general duties, Nurse Manager Bledsoe supervises other nurses working at Red Onion. She asserts that, before security staff utilize OC spray on an inmate, protocol requires them to contact a nurse to determine if the inmate has any medical condition that would prohibit its use. The nurse reviews the inmate's medical chart for any medical condition contraindicated for the use of OC spray. As established by the Red Onion medical authority (the site physician), only two medical conditions are considered contraindications for use of chemical spray against an inmate: "(1) acute eye infection and (2) severe chronic obstructive pulmonary disease." (*Id.* ¶ 2.) If the nurse finds no such contraindicating condition, the nurse reports that fact to security personnel.

After receiving the summary judgment motion, Riddick moved for production of Red Onion's list of medical conditions considered contraindications for use of OC spray, and the court directed defendants to provide any document responsive to that request. (*See* ECF Nos. 255 & 257). Counsel for the security defendants responded to Riddick by letter:

> Upon information and belief, there is not a written VDOC or Red Onion policy, instruction, or order which specifically details the medical conditions which are contraindications for the use of OC spray. From [counsel's] understanding, Red Onion has non-written protocols that are followed by medical staff regarding the

---

[5] Nurse Manager Bledsoe included the records on which she relied with her declaration.

> medical conditions which are contraindications for the use of
> O.C. spray.

(ECF No. 264-1.) Dr. Fox, the site physician for Red Onion, stated in a declaration that the medical conditions "considered contraindications for use of chemical spray are (1) acute eye infection and (2) severe chronic obstructive pulmonary disease." (Decl. of K. Fox, M.D. ¶ 2, May 26, 2022 [ECF No. 265-1].) Dr. Fox also stated: "[A]sthma is not a medical condition that would prohibit the use of OC spray on a prisoner. [Riddick's] history of asthma, if any, is not a contraindicating condition for the use of OC spray." (*Id.* at ¶¶ 4–5.)

After review of Riddick's medical records prior to April 5, 2019, Nurse Manager Bledsoe confirmed that Riddick did not have any contraindicating medical condition and had no separate physician's order that advised against security officers using OC spray against him. Based on these records, she stated, "[O]n April 5, 2019, Nurse Phillips correctly informed security that Mr. Riddick did not have any contraindicating medical conditions prohibiting the use of OC spray." (Bledsoe Decl. ¶ 6.)

Riddick's medical records do indicate that he was previously diagnosed with asthma. But they do not indicate that he had suffered any asthma attacks in at least the year prior to April 5, 2019. The undisputed medical records also show that medical staff examined Riddick after his OC exposure and reported that his respirations were even and unlabored, and that he was in no acute distress.

## II.   DISCUSSION

### A. The Summary Judgment Standard

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. The plaintiff is entitled to have the credibility of all his evidence presumed. The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials.

*Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

In order to avoid summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine [factual] issue for trial" on which the jury could find in his favor. *Anderson*, 477 U.S. at 248. "Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). "[U]nsupported speculation is not sufficient to defeat a summary judgment motion." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992). The court's inquiry is whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014). A *pro se* litigant's verified complaint or other submission must be considered as an affidavit and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

B. *The Constitutional Standard*

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Makdessi v. Fields*, 789 F.3d 126, 132 (4th Cir. 2015). Thus, inmates have an Eighth Amendment right to receive adequate medical care while incarcerated. *Sincto v. Scarberry*, 841 F.3d 219, 236 (4th Cir. 2016). To establish a § 1983 claim for denial of medical care, the inmate must set out facts sufficient to show that an official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

First, the plaintiff must satisfy an objective component; he must show that he suffered (1) "a serious or significant physical or emotional injury," or faced (2) "a substantial risk of such serious harm." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). He must show that his medical condition at issue in the case was objectively serious, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Second, the plaintiff must show that, subjectively, the defendant "acted with a sufficiently culpable state of mind." *De'Lonta*, 330 F.3d at 634. Facts must show that the defendant knew "both the inmate's serious medical condition and the excessive risk posed by the [defendant's] action or inaction." *Scinto*, 841 F.3d at 226; *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Negligence, such as an "error of judgment" on the part of prison medical staff or "inadvertent failure to provide adequate medical care," while perhaps sufficient to support an action for

malpractice, does not constitute a constitutional deprivation redressable under § 1983. *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989). Finally, the defendant's conduct must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Miltier v. Beorn*, 896 F.2d 848, 851-52 (4th Cir. 1990), *overruled in part on other grounds* by *Farmer*, 511 U.S. at 837. "[N]egligent medical diagnoses or treatment, without more, do not constitute deliberate indifference." *Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008) (unpublished).

### C. *Claim against Nurse Phillips*

Riddick contends that, when asked to review his medical records for contraindications for use of OC spray on April 5, 2019, Nurse Phillips found no such contraindication, despite Riddick's history of being diagnosed with asthma. Riddick argues that Nurse Phillips was deliberately indifferent because she should have known that OC spray affects the respiratory system and would, therefore, pose a significant risk of harm to a diagnosed asthmatic.

For purposes of this opinion, the court assumes (without deciding) that Nurse Phillips advised security officers that Riddick's medical records did not reflect any medical condition that would caution against use OC spray against him on April 5, 2019. Riddick asserts— offering no medical opinion or documentation in support—that no competent medical provider would authorize officers to use OC spray on an inmate with asthma and that any evidence to the contrary is "false." (Resp. at 3 [ECF No. 252].) Riddick also alleges that, after the OC spray incident, he was fatigued for days and suffered shortness of breath, blurry vision, heart "palpitations, nausea, headache, [and] lightheadedness." (*Id.* at 3.)

On this record, no reasonable jury could find that Nurse Phillips acted with deliberate indifference when failing to advise officers not use OC spray against Riddick because of his asthma. First, the record evidence indicates that under Red Onion protocol, an inmate's diagnosis of asthma is not a medical condition that prohibits officers from the use of OC spray. Riddick presents nothing more than his own unsupported and conclusory assertions to the contrary.[6] *Richardson v. Clarke*, 52 F.4th 614, 620 (4th Cir. November 7, 2022) (holding that "conclusory assertion" that the VDOC's affidavits are medically inaccurate cannot defeat defendant's motion for summary judgment); *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (holding mere "conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion"). Riddick offers no medical documentation or expert testimony showing that a history of asthma alone cautions against use of OC spray to bring a recalcitrant inmate back under officials' control. Thus, there is no genuine dispute about this fact.

Second, there are no material facts in dispute showing that Nurse Phillips knew the OC spray would place Riddick at risk of substantial harm merely because of his asthma diagnosis. That is not to say Nurse Phillips believed OC spray would cause Riddick no discomfort or harm. Without question,

> chemical spray is not designed to be comfortable—its purpose is to inflict pain and debilitate. By its very nature, properly used chemical spray still "possesses inherently dangerous characteristics capable of causing serious and perhaps irreparable injury to the victim." And yet, chemical spray is a generally

---

[6] Riddick complains that Nurse Phillips fails to present any doctor's opinion about whether asthma is a contraindication for use of OC spray. As discussed, however, in response to Riddick's discovery request, the record includes Dr. Fox's statement that "asthma is not a medical condition that would prohibit the use of OC spray on a prisoner." (Fox Decl. ¶ 2, ECF No. 265-1.).

> accepted non-lethal means of controlling unruly inmates, which may in fact be "much more humane and effective than a flesh to flesh confrontation with an inmate."

*Delk v. Moran*, No. 7:16CV00554, 2019 WL 1233596, at *5 (W.D. Va. Mar. 15, 2019) (cleaned up). In sum, Riddick has failed to point to any genuine issue of material fact indicating that Nurse Phillips was aware of a substantial risk that OC spray would cause him serious harm because of his medical history or conditions.

Third, the prison's medical director, Dr. Fox, had not flagged asthma as a condition likely to be significantly aggravated by OC spray, such that officers should not use the substance on a prisoner diagnosed with that condition. "It is not the function of prison administrators or nurses to second guess the good-faith medical judgments of licensed physicians." *Patterson v. Smith*, No. 1:20CV202(AJT/MSN), 2020 WL 6928614, at *7 n.10 (E.D. Va. Nov. 24, 2020) (citing other cases). As a member of the prison medical staff, Nurse Phillips could reasonably rely on the protocol established by the supervising physician regarding conditions that medically contraindicated the use of OC spray. *See Delk*, 2019 WL 1233596, at *6 (finding that nurse "was entitled to rely on the site physician's determination of contraindications" for use of OC spray on inmate).

At most, Nurse Phillips's actions— authorizing the use of OC spray despite its possible adverse effect on an inmate with a compromised respiratory system—might be characterized as negligent. But without more, the nurse's possible negligence does not give rise to a viable § 1983 claim for deliberate indifference to a serious medical need. *Webb*, 281 F. App'x at 166.

### III.   CONCLUSION

For the reasons stated, the court concludes that Nurse Phillips is entitled to summary judgment as a matter of law and will grant her motion.

The Clerk is directed to forward a copy of this memorandum opinion and accompanying order to Riddick and to counsel of record.

**ENTERED** this 9th day of December, 2022.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE