IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

|  |  |  |
|---|---|---|
| **STEVE RIDDICK,** | ) | **CASE NO. 7:20cv00081** |
| Plaintiff, | ) |  |
| v. | ) | **ORDER** |
|  | ) |  |
| **S. FRANKLIN,** | ) | By:  Hon. Thomas T. Cullen |
| *et al.*, | ) | United States District Judge |
| Defendants. | ) |  |

This case is before the court following several pretrial rulings by the assigned Magistrate Judge. Plaintiff Steve Riddick now moves for reconsideration of several rulings regarding his complaints that certain video evidence proffered by the defendants is not authentic (ECF No. 254). He also objects to two prior, related orders (*see* ECF Nos. 241, 242). Because Riddick asks this court to usurp the trier of fact's authority to weigh the evidence and adopt his unsupported theories as fact, the court will overrule his objections and deny Riddick's motion.

In response to Riddick's requests for production (ECF No. 121), the defendants submitted 13 video clips to the court. The record reflects that Riddick has viewed each of these clips in late January 2021, and again on February 8, 2021. (ECF No. 131.) Thereafter, Riddick filed a motion asserting that two unspecified clips of video shown to him in February 2021 were not the same clips he had viewed the month prior. (*See generally* Pl.'s Mot. [ECF No. 235].) He contends that someone has altered one or more of the clips by combining some video of him with an "enactment of events" using some other inmate. (*Id.* at 2.) He claims that he has submitted notarized affidavits about this change and a photograph of himself for the court to use for comparison purposes. His motion also demands various measures be taken to investigate this alleged discrepancy between the video clips.

After reviewing his motion, the Magistrate Judge issued an order denying Riddick's demands for: appointment of a video expert; in-camera examination of the video evidence; an evidentiary hearing before trial; and an additional order to produce further or different video evidence of the incident in this case. (ECF No. 236.) But the Order took Riddick's motion under advisement "insofar as it alleges spoliation of certain video evidence." (*Id.* ¶ 2.)

In response, the defendants submitted an affidavit from J. Bentley, a sergeant and intelligence investigator at Red Onion State Prison (ECF No. 244-1). Bentley indicates that all the video clips produced to the court and shown to Riddick of events on April 5, 2019, at Red Onion were "preserved in their original form." (*Id.* ¶ 5.) Bentley further testified:

> When Max Pro surveillance video is preserved, it is saved to a network drive. Staff does not have the ability to edit or modify videos saved on the network drive and have limited access to the network drive. The videos that Riddick watched were saved to the network drive and were not altered, tampered with, changed or modified. Access to the data storage media is carefully controlled and secured at all times to prevent unauthorized access and misuse of the footage. To the extent that Riddick alleges that the videos that he watched were "reenacted" or are "fake", this is false. The aforementioned-videos that he was shown are authentic and were in no way reenactments of the alleged incident. [Red Onion] has neither the time nor resources to spend on "reenacting" any incident and would not do so in relation to any litigation. The videos that Mr. Riddick watched are the videos that were kept in the ordinary course of business at VDOC.

(*Id.* at ¶¶ 6–8.)

Based on the defendants' evidence and Riddick's naked representations about altered video clips, the magistrate judge denied Riddick's motion as to his allegation of spoliation of video evidence. (*See* ECF No. 251.) She held that Riddick's concerns about the depictions on

the video footage present issues of authentication and/or the weight to be given to the video evidence and that such matters must be determined by the jury at trial.

Riddick's current motion (ECF Nos. 254) asks the court to reconsider the magistrate judge's rulings regarding the video clips. Rule 72(a) of the Federal Rules of Civil Procedure permits a party to submit objections to a magistrate judge's ruling on non-dispositive matters, such as discovery orders, within 14 days of the order. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1). "A magistrate judge's nondispositive ruling will be set aside only if it is clearly erroneous or contrary to law." *Norris v. Excel Indus., Inc.*, No. 5:14-CV-00029, 2015 WL 4431022, at *2 (W.D. Va. July 20, 2015) (cleaned up) (quoting Fed. R. Civ. P. 72(a)). The court reviews the magistrate judge's decisions on questions of law under the "contrary to law" standard. *Clinch Coal. v. United States Forest Serv.*, No. 2:21CV00003, 2022 WL 1018840, at *3 (W.D. Va. Apr. 5, 2022). "If an order fails to apply or misapplies relevant statutes, case law, or rules of procedure, it is contrary to law." *Norris*, 2015 WL 4431022, at *2 (cleaned up) (quoting *Buford v. Ammar's Inc.*, No. 1:14cv00012, 2014 WL 753083, at *1 (W.D. Va. Nov. 24, 2014)). "In the context of Rule 72(a), this 'contrary to law' standard is equivalent to de novo review." *Clinch Coal.*, 2022 WL 1018840, at *3 (quoting *Harleysville Ins. Co. v. Holding Funeral Home, Inc.*, No. 1:15CV00057, 2017 WL 2210520, at *2 (W.D. Va. May 19, 2017)).

Regarding spoliation of evidence: under Rule 37(e) of the Federal Rules of Civil Procedure, when "electronically stored information that should have been preserved . . . is lost because a party failed to take reasonable steps to preserve it," "upon finding prejudice to another party from loss of the information," the court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Where the person who destroyed

evidence—the spoliator—"acted with the intent to deprive another party of the information's use in the litigation," the court may "presume that the lost information was unfavorable to the party," "instruct the jury that it may or must presume the information was unfavorable to the party," or "dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2).

In this case, the defendants' evidence is that they have produced video footage in response to Riddick's discovery requests. He simply disagrees with the accuracy of events depicted on some of the produced video and, based on his personal opinion, he claims some footage has been faked.

Riddick's motion first asserts that the court should somehow determine before trial the authenticity of the video evidence that he asked the defendants to produce. Although Riddick is proceeding without counsel, that fact does not entitle him to court-funded forensic investigation or verification of the validity of the video clips the defendants have produced. *See Muhammad v. Bunts*, 1:03-cv-00228, 2006 WL 8442089 (N.D.W. Va. Sept. 18, 2006) ("[T]he funds to pay for such witness do not exist under 28 U.S.C. § 1915 . . . ."). Although the court may appoint an expert to aid its own understanding of technical issues, *see* Fed. R. Evid. 706, that rule "is not intended to further partisan interests of any party . . . ." *Boyes v. Young*, No. 2:20-cv-00108, 2022 WL 214122, at *1 (S.D.W. Va. Jan. 24, 2022). Even if the court had the authority to appoint (and pay for) such a forensic expert in this case, Riddick has not made a threshold showing that the videos may have been altered. At the end of the day, the admissibility of the videos will be determined at trial in accordance with Federal Rules of Evidence 901. *See* Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating . . . an item of evidence, the proponent must produce evidence sufficient to support a finding that

the item is what the proponent claims it is."); *United States v. Cejas*, 761 F.3d 717, 723 (7th Cir. 2014) ("For video recordings, . . . the proponent should also show that the camera functioned properly, the operator was competent in operating the equipment, and the recording fairly and accurately represented the scene depicted."). Assuming the defendants can satisfy this low bar to admissibility, Riddick will be free to argue that the videos are not entitled to substantial weight. *See, e.g.*, *New York v. Houston*, 118 N.Y.S.3d 110, 111 (Mar. 12, 2020) (noting that "any alleged uncertainty [that the videotapes depicted the relevant events] went to the weight to be accorded the evidence rather than its admissibility").Accordingly, the magistrate judge did not clearly err in denying request for pretrial forensic evaluation of the video evidence.

Next, with no supporting evidence whatsoever, Riddick asserts that VDOC maintains an offsite record of all emails and other data, including backup video footage filmed at VDOC prison facilities. The court finds no factual basis on which to grant Riddick's request for footage from that supposed video-storage facility for the court to compare to the footage in the record.

Riddick also faults the magistrate judge for failing to state whether she viewed the disputed video clips and compared them to the photograph of himself. Although the magistrate judge did not specifically describe conducting a frame-by-frame comparison, her decision indicates that she adequately considered and analyzed the video evidence at issue.

Third, Riddick claims that, by failing to verify the videos' authenticity, the court is showing bias in favor of the defendants. There is no basis for such an allegation. If Riddick or the defendants choose to move for admission of the video at trial, the jury will hear whatever

evidence each party submits regarding that video's history and purported accuracy. The jurors, not the court, will decide whether the events depicted are worthy of belief.

Finally, Riddick asks the court to consider Investigator Bentley's use of different terminology concerning video storage and his lack of personal involvement in saving the video clips. Riddick alleges that in one submission, Bentley stated that the video clips were "saved to an external hard drive," but in the most recent affidavit, Bentley stated that the clips were "saved to an VDOC network drive." (ECF No. 254 at 6.) Riddick also points out that Investigator Fannin, rather than Investigator Bentley, saved the video footage in question. Riddick fails to show how these alleged discrepancies demonstrate that anyone destroyed or altered any video evidence related to his claims.

For the stated reasons, the court concludes that Riddick's motion fails to demonstrate how any of the magistrate judge's rulings regarding the video clips in the court's record is clearly erroneous or is contrary to law. *See* Fed. R. Civ. P. 72(a). Accordingly, the court finds no basis on which to alter or amend any of those rulings.

For these reasons, it is **ORDERED** that Riddick's motion (ECF No. 254) is **DENIED**. His objections to the magistrate judge's prior rulings related to the video footage (ECF Nos. 241, 242) are **OVERRULED**.[*]

---

[*] Riddick's objections in ECF No. 241 parallel those he makes in his current motion, asking for a video expert or other authentication of video before trial. For reasons already stated, the court will overrule the objections in ECF No. 241. Riddick's objection in ECF No. 242 seeks production of surveillance camera footage to compare to handheld video footage already in the record, showing Riddick's removal from ambulatory restraints. The magistrate judge denied a request for such footage because Riddick had not demonstrated its relevance to claims remaining in this action. Because this ruling is neither clearly erroneous nor contrary to law, *see* Fed. R. Civ. P. 72(a), the court overrules Riddick's objection.

The clerk is directed to forward a copy of this Order to the parties.

**ENTERED** this 9th day of December, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE